17520

Irene M. JACKSON, Respondent, v. Robert JACKSON, Appellant

(108 S. E. (2d) 86)

*Joseph L. Nettles, Esq.,* of Columbia, *for appellant,*

*Messrs. Powell, George & Poston,* of Columbia, *for respondent,*

April 6, 1959.

Moss, Justice.

The respondent, Irene M. Jackson, brought this action to recover damages for personal injuries resulting from the alleged willful, wanton and reckless operation of an automobile by Robert Jackson, appellant herein, the husband of the respondent, while she was riding as a guest in said automobile on Jully 18, 1958.

The answer of the appellant denied the material allegations of the complaint, admitting however, that the automobile in which he and his wife were riding was involved in an automobile collision at the time alleged in the complaint. The answer also alleged that if the appellant was guilty of any willfullness, wantonness or recklessness in the operation of his said automobile the same was known to and acquiesced in by the respondent and that her contributory willfullness, wantonness and recklessness, in failing to take any action for her own protection, and in acquiescing and concurring in the manner in which the said automobile was driven, combined and concurred with that of the appellant, and contributed as a proximate cause of her injuries.

The cause came on for trial before the Honorable Legare Bates, Judge of the Richland County Court, and a jury. At the conclusion of the testimony, Judge Bates directed a verdict in favor of the respondent as to liability and submitted to the jury only the question of the amount of damages. In directing a verdict for the respondent the trial Judge stated that he did so because the appellant "put up no testimony" and because "there has not been one iota of testimony in this case which denies or contradicts the allegations of the complaint by anyone coming upon this witness stand." The trial resulted in a verdict in favor of the respondent for actual damages.

The appellant gave timely notice of intention to appeal to this Court. The case is before this Court upon proper exceptions challenging the foregoing ruling of the trial Judge in directing a verdict for the respondent. The questions presented to this Court are (1) Whether it was proper to direct a verdict in favor of the respondent when her case depended upon her own credibility; and (2) Was there evidence from which the jury could have found that the respondent was guilty of the same degree of willfullness, wantonness and recklessness as that charged against the appellant, which contributed as a proximate cause to the injuries of the respondent. The appellant asserts that more than one reasonable inference could be drawn from the evidence as to such questions and it was for the jury, not the Court, to decide the conflicting inferences and conclusions.

This case is founded upon and governed by Section 46-801 of the 1952 Code of Laws of South Carolina, which provides that "no person transported by an owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such motor vehicle or its owner or operator for injury, death or loss in case of an accident unless such accident shall have been intentional on the part of such owner or operator or caused by his heedlessness or his reckless disregard of the rights of others". The foregoing section, as construed by this Court, restricts liability to a guest to cases where injury has resulted from either intentional or reckless misconduct of the owner or operator of the motor vehicle. *Fulghum v. Bleakley,* 177 S. C. 286, 181 S. E. 30; *Brown v. Hill,* 228 S. C. 34, 88 S. E. (2d) 838; *Saxon v. Saxon,* 231 S. C. 378, 98 S. E. (2d) 803 and *Benton v. Pellum,* 232 S. C. 26, 100 S. E. (2d) 534.

The accident, from which this case arose, occurred at about 3:00 A. M. on the morning of July 18, 1958. It appears from the record that the respondent is the wife of the appellant and that about midnight the wife, in the husband's car, picked him up when he got off from work. They went

to a drive-in restaurant on Main Street in the City of Columbia and stayed there for some time. The wife testified that the husband took a drink of whiskey in her presence from a bottle that was under the seat of the automobile. She testified that she saw him put the bottle in his pocket. After leaving the drive-in restaurant on Main Street in Columbia, the appellant drove the automobile to the "Goody Shop", another drive-in at Five Points in Columbia, this being the place where the respondent was employed, for the purpose of obtaining a pair of shoes which the respondent had left there. She testified that an employee of the Goody Shop came out to the car and talked to them about a place of business, and during that time the appellant made a trip to the rest room inside. The parties left the Goody Shop about 3:00 o'clock in the morning. The husband drove the automobile up Harden Street to Gervais Street, thence West on Gervais Street to the intersection of Gervais and Bull Streets. There, while stopped at a red light, they apparently decided to return to the Goody Shop because the respondent had forgotten the shoes that she intended to get when they first went to the said shop. The wife claims that the husband made a normal U-turn back east on Gervais Street, then went at normal speed two blocks east to Pickens Street, thence south on Pickens to Pendleton Street, where, after pausing for a red light he turned east on Pendleton Street and then suddenly accelerated his speed until the wreck occurred some two blocks further east on said Pendleton Street. She also testified that her husband began speeding when they first turned on Pickens Street from Gervais Street and that she warned him three times "to slow down". She testified that she had not seen her husband take but one drink but that the next day he admitted to her that he had "slipped" several drinks. She also testified that she didn't think her husband was intoxicated.

Two police officers also testified in behalf of the respondent. Officer Wilbur of the Columbia Police Department testified that the car driven by the appellant made a high speed

U-turn at Gervais and Marion Streets; that when the husband saw the police car he speeded down Gervais Street to Bull Street, then cut off the car lights and raced down Bull Street to Senate Street, thence at a high speed down Senate Street to Barnwell Street, and crashed into parked cars in an effort to turn into Pendleton Street. It should be noted that this testimony of the officer as to the streets traveled by the appellant is at variance with the testimony of the respondent. The wife had also testified that the lights on the automobile driven by her husband were burning. This was also at variance with the testimony of the officer. This officer testified that he was in close pursuit and arrived at the scene of the collision immediately after it happened. He testified that when he got the appellant out of the car he was staggering. Upon cross-examination he testified as follows:

"Q. And when you saw him, he was flat drunk then? A. Yes, sir.

Q. And anybody with eyes could tell he was drunk? A. Yes, sir.

\* \* \*

Q. Now, then, did you examine that car thoroughly after everybody was out of it? A. Yes, sir.

Q. Did you find any whiskey bottles in there? A. Yes, sir. There was one empty and one that still had some whiskey in it.

Q. One empty one. Was it half empty or three-fourths empty? A. I would say it was half full.

Q. So somebody had drunk nearly a pint of liquor? A. Yes, sir.

Q. Was there any odor of whiskey in the car? A. Yes, sir, a strong odor.

\* \* \*

Q. Did you notice whether or not Mrs. Jackson had whiskey on her breath? A. No, sir, I didn't.

Q. Did you notice whether or not Mr. Jackson had any? A. Yes, sir.

Q. I mean the odor? A. Yes, sir.

Q. Did he smell like a brewery? A. Yes, sir.

Q. Now, where were those two whiskey bottles? A. On the passenger side under the front seat."

Officer Derrick also testified in behalf of the respondent. He said he arrived approximately fifteen minutes after the collision. He testified that the appellant was intoxicated and that any average person could tell that the appellant was drinking and it was perfectly obvious that he was drunk.

This Court has held in numerous cases that the credibility of witnesses and the weight to be given to their testimony are questions for the jury. *Watson v. American Equitable Assur. Co.,* 195 S. C. 463, 12 S. E. (2d) 30; *Jones v. Atlanta-Charlotte Air Line R. Co.,* 218 S. C. 537, 63 S. E. (2d) 476, 26 A. L. R. (2d) 297; *Cammer v. Atlantic Coast Line R. Co.,* 214 S. C. 71, 51 S. E. (2d) 174.

In the case of *Green v. Greenville County,* 176 S. C. 433, 180 S. E. 471, 473, this Court said:

"The fact that evidence is not contradicted by direct evidence does not render it undisputed, as there still remains the question of its inherent probability and the credibility of the witness or his interest in the result. To justify a Court in instructing a jury that a witness has told the truth, and in directing a verdict based on the truthfulness of his evidence, there must be nothing in the circumstances or surroundings tending to impeach the witness or to throw discredit on his statements. If there is anything tending to create distrust in his truthfulness, the question must be left to the jury."

In *Jones v. Atlanta-Charlotte Air Line R. Co., supra* [218 S. C. 537, 63 S. E. (2d) 478], it was said:

"* * * Regardless, however of this contradiction in the testimony, that of the interested crewmen need not have been accepted by the jury if they did not believe it; they were the judges of the credibility of the witnesses and of the weight of the evidence. * * *"

The fact that the respondent's testimony was not contradicted by direct evidence did not have the effect of making it undisputed or placing the stamp of verity upon it. It was for the jury to pass upon the credibility of the testimony of the respondent. In passing upon the credibility of her testimony the jury could take into consideration her interest in the result, the accuracy of her recollection and all of the circumstances and surroundings tending to impeach her as a witness or to throw discredit on her statements.

We come, now to the question of whether the trial Judge committed error in directing a verdict for the respondent. It has long been the rule in this State that a trial Judge should direct a verdict in those instances only where reasonable minds could draw but one inference from the evidence; this, of course, would occur where there is an entire absence of evidence to support a contrary conclusion. *Matheson v. Caribo,* 117 S. C. 291, 109 S. E. 102, 17 A. L. R. 1263.

In the case of *Brooks v. Floyd,* 121 S. C. 356, 113 S. E. 490, it was said:

"Under the well-settled rule, if there was any evidence tending to support the defense interposed by defendant, the trial judge could not properly have directed a verdict. Under the equally well-settled rule, on such motion defendant was entitled to have the evidence considered and construed most strongly in his favor."

In *Richardson v. Northwestern R. Co. of S. C.,* 124 S. C. 314, 117 S. E. 510, 514, this Court quoted from *Wood v. Victor Mfg. Co.,* 66 S. C. 482, 45 S. E. 81, as follows:

"The general rule is well known that questions of fact are to be submitted to the jury, and this includes not only cases when the facts are in dispute, but also when the question is as to inference to be drawn from such facts after they have been determined."

We think the trial Judge, in directing a verdict for the respondent, fell into error when he based his ruling upon the fact that the appellant did not put up any witnesses in his behalf. He overlooked the settled rule of law that the appellant's defense could be supplied by the witnesses for the respondent.

In the case of *Eargle v. Sumter Lighting Co.,* 110 S. C. 560, 96 S. E. 909, 911, it was said:

"* * * It is immaterial from whose witnesses—whether plaintiff's or defendant's—the evidence in support of an element of damage or of the cause of action or defense may come. Either party has the right to make out or to strengthen his case or defense on the examination of the witnesses of his adversary. * * *"

In the case of *Greenville County v. Stover,* 198 S. C. 240, 17 S. E. (2d) 535, 537, this Court held:

"That proof of a plaintiff's cause of action (where a nonsuit is not granted) can be supplied by a defendant, and conversely, proof of a defendant's defense can be supplied by a plaintiff, is a postulate which cannot be denied."

A guest is barred from recovery for injuries caused by the host's reckless disregard of the guest's safety, if knowing of the host's reckless misconduct and the danger involved to said guest, the guest recklessly exposes himself thereto. Where a guest voluntarily continues to ride with a driver, who, because of intoxication, is not in possession of his faculties, the guest is reckless in the same degree as the driver, provided the guest has had the opportunity to remove himself from such danger by not continuing as a guest in the automobile operated by such intoxicated driver. In this connection, see the cases of *Augustine v. Christopoulo,* 196 S. C. 381, 13 S. E. (2d) 918 and *Nettles v. Your Ice Co.,* 191 S. C. 429, 4 S. E. (2d) 797.

Viewing the testimony in this case as a whole, we are of the opinion that it raised an issue for the jury as to whether the respondent consciously failed to exer-

cise due care for her safety. It was for a jury to determine whether the respondent knew, or should have known, of the intoxicated condition of her husband and continued to ride as a guest in his car with such knowledge. It was just a matter of minutes after the appellant and respondent left the Goody Shop until the accident occurred. The two police officers testified that the appellant was drunk at the time of the collision. As is heretofore stated, the wife testified that her husband took a drink of whiskey in her presence. There is testimony that at the scene of the wreck the whiskey bottles were under the feet of the respondent. From this evidence the jury could have concluded that the respondent knew of the intoxicated condition of her husband and continued to ride with him when she could have removed herself from the car at the Goody Shop just a few minutes before the collision.

We think the question of whether the respondent was guilty of contributory willfullness which contributed as a proximate cause of her injuries should have been submitted to the jury.

The judgment of the lower Court is reversed and this case is remanded for a new trial.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.