17933

Elvira Kirby CROCKER, as Administratrix of the Estate of Robert E. Kirby, Respondent, v. Joe Manning WEATHERS and Wendell West, Defendants, of whom Wendell West is, Appellant.

(126 S. E. (2d) 335)

414

*Messrs. Butler, Chapman & Barnes,* of Spartanburg, *for Appellant,*

*Messrs. Burts & Turner,* of Spartanburg, *for Respondent,*

June 14, 1962.

Moss, Justice.

This action was instituted by Elvira Kirby Crocker, as administratrix of the estate of Robert E. Kirby, deceased, the respondent herein, against Joe Manning Weathers and Wendell West, defendants, of whom Wendell West is the appellant, to recover damages for the wrongful death of Robert E. Kirby. The action was brought pursuant to Section 10-1951 *et seq.*, 1952 Code of Laws of South Carolina, for the benefit of Elvira Kirby Crocker, the mother and the sole beneficiary under said statute.

The complaint alleges that on November 20, 1960, Robert E. Kirby was riding as a passenger in an automobile owned by Joe Manning Weathers and was being operated by the appellant, as agent of Joe Manning Weathers, with his consent and while the said Weathers was riding in said

automobile. It is then alleged that while the appellant was operating the automobile owned by Weathers that he drove the same off of the highway into a field, causing the said automobile to turn over a number of times, and that Robert E. Kirby received severe injuries from which he later died. It is further alleged that the death of respondent's intestate was proximately caused by the gross negligence, carelessness, willfulness, wantonness, heedlessnes and recklessness of Joe Manning Weathers and the appellant. The answer of Weathers and the appellant contained a general denial and, by way of further defense, alleged that the death of the respondent's intestate was caused and occasioned by his own contributory heedlessness, willfulness and recklessness, in voluntarily riding in an automobile driven by either Weathers or the appellant when he knew that they were under the influence of intoxicating liquors to such an extent that neither of them was capable of driving an automobile in a proper manner.

At the close of the testimony in behalf of the respondent, a timely motion for a nonsuit was made on the ground that the evidence showed that the respondent's intestate was guilty of contributory heedlessness, recklessness and willfulness so as to bar a recovery on the ground that he voluntarily entrusted himself and his safety to a driver who was operating the said automobile while under the influence of intoxicants. The second ground of the motion was that the evidence showed conclusively that respondent's intestate was driving the automobile at the time of the accident. The trial Judge overruled the motion for a nonsuit. Weathers and the appellant closed their case without offering any testimony. The case was submitted to a jury and resulted in a verdict in favor of the respondent for actual and punitive damages. Following the rendition of the verdict, a motion was made on behalf of Weathers and the appellant for judgment *non obstante veredicto,* or failing therein, for a new trial. This motion was refused. Weathers did not appeal but

timely notice of intention to appeal to this Court was given by Wendell West.

The first question for determination, as made by the exceptions of the appellant, is whether the evidence shows that respondent's intestate was guilty of contributory recklessness and willfulness as a matter of law. The appellant's motion for a nonsuit, judgment *non obstante veredicto,* and alternatively for a new trial, raises this question of whether or not there was error in refusing the motion of the appellant for a nonsuit, judgment *non obstante veredicto,* and alternatively for a new trial, requires us to consider the testimony and the reasonable inferences to be drawn therefrom in a light most favorable to the respondent. If more than one reasonable inference can be drawn from the evidence, the case must be submitted to the jury. However, if the evidence is susceptible of only one reasonable inference, the question is no longer one for the jury but one of law for the Court. *Green v. Bolen,* 237 S. C. 1, 115 S. E. (2d) 667. Ordinarily, contributory recklessness and willfulness is an issue for the jury and rarely becomes a question of law for the Court. Questions as to the contributory recklessness and willfulness of a guest in an automobile must be determined from the facts of the particular case and are usually for determination by the jury. *Augustine v. Christopoulo et al.,* 196 S. C. 381, 13 S. E. (2d) 918.

It is the contention of the respondent that her intestate was riding as a passenger in an automobile owned by Weathers and operated by the appellant. If the respondent's intestate was a guest passenger in said automobile, then this action is governed by Section 46-801 of the 1952 Code of Laws of South Carolina, which provides that "no person transported by an owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such motor vehicle or its owner or operator for injury, death or loss in case of an accident unless such accident shall

have been intentional on the part of such owner or operator or caused by his heedlessness or his reckless disregard of the rights of others." The foregoing section, as construed by this Court, restricts liability to a guest to cases where injury has resulted from either intentional or reckless misconduct of the owner or operator of the motor vehicle. *Fulghum v. Bleakley,* 177 S. C. 286, 181 S. E. 30; *Brown v. Hill,* 228 S. C. 34, 88 S. E. (2d) 838; *Saxon v. Saxon,* 231 S. C. 378, 98 S. E. (2d) 803; *Benton v. Pellum,* 232 S. C. 26, 100 S. E. (2d) 534; and *Jackson v. Jackson,* 234 S. C. 291, 108 S. E. (2d) 86.

The respondent's intestate was eighteen years of age, a cousin of Wendell West and a nephew of Joe Manning Weathers. It appears from the record that on Sunday, November 20, 1960, that Robert Kirby, Joe Manning Weathers and Wendell West were together at the Glenn Springs Service Station located on Highway 215, in Spartanburg County. Raymond Taylor, the proprietor of the service station, closed such at 12:15 P. M. in order to go home to lunch. He left Kirby, Weathers and West in the yard of the station. He testified that all three were sober at the time.

It appears from the testimony of Ellis Wyatt, that he was at Wyatt's Service Station located about one mile north of Pauline, on Sunday, November 20, 1960, and that Weathers, West and Kirby came to such service station between 1:30 and 2:00 o'clock P. M. He testified that the three stayed at the service station ten or fifteen minutes and that it appeared to him that Weathers and West had been drinking but that Kirby had not. As to how much West and Weathers had been drinking, he said, "Well, they wasn't what you would call plumb drunk. They had been drinking." He further testified that they talked normally and quietly while at the service station. He further testified that he was outside of the service station when these three left. He said that Kirby got in the back seat of the automobile and Wendell West got under the steering wheel and Weathers got

in on the right hand side in the front. He said that the car left the station "pretty fast" going in the direction of Pauline. He further said that about fifteen or twenty minutes later he saw this same car in a wrecked condition. This witness also stated that he smelled whiskey on Weathers and West, and expressed the opinion that he wouldn't want to ride with either of them because they were too drunk to drive.

Maynard Miller, an officer who investigated the wreck, testified that the automobile in which the three parties were riding left the road at a sharp curve some three or four hundred feet from where the car came to rest. He testified that West and Kirby were approximately five or six feet from the left side of the wrecked car and Weathers was underneath the car. He said he helped pull Weathers from under the car and that he smelled alcohol on him but that he did not smell any on West or Kirby because he did not get close enough to either of them to tell whether they were drinking. He testified further that Weathers told him that he and West "had been drinking pretty heavy."

The officer further testified that when the automobile reached a sharp curve to the right on Highway 215, about 3/10 of a mile north of Glenn Springs, it went off the curve on the left hand side of the road and came back across the highway and went off to the right, knocking down a speed zone sign, jumping a gully and hit a chinaberry tree about twelve to fifteen inches in diameter and then traveled sixty or seventy feet on out into a field, where the automobile came to rest "on its wheels", but was heavily damaged.

A guest is barred from recovery for injuries caused by the host's reckless disregard of the guest's safety, if knowing of the host's reckless misconduct and the danger involved to said guest, the guest recklessly exposes himself thereto. Where a guest voluntarily continues to ride with a driver, who, because of intoxication, is not in possession of his faculties, the guest is reckless in the same degree

as the driver, provided the guest has had the opportunity to remove himself from such danger by not continuing as a guest in the automobile ·operated by such intoxicated driver. In this connection, see the case of *Nettles v. Your Ice Co.,* 191 S. C. 429, 4 S. E. (2d) 797; *Augustine v. Christopoulo,* 196 S. C. 381, 13 S. E. (2d) 918; *Jackson v. Jackson,* 234 S. C. 291, 108 S. E. (2d) 86, and *Ardis v. Griffin,* 239 S. C. 529, 123 S. E. (2d) 876.

In the case of *Nettles v. Your Ice Co., supra,* the guest was held to have been guilty of contributory willfulness in continuing to ride in the vehicle, after opportunity to get out, when he knew the driver was getting progressively drunk and appreciated the danger to which he subjected himself. The Court held that, under these circumstances, the guest was, as a matter of law, guilty of contributory willfulness without which his injury would not have occurred.

The case of *Augustine v. Christopoulo et al., supra,* was one in which the guest testified that he knew of and appreciated the danger to which he was exposed by continuing to ride with the intoxicated driver. This Court held that "the appellant (guest) having testified that he knew of and appreciated the great danger to which he was exposed and would continue to be exposed so long as he remained in respondent's automobile on this trip and voluntarily continued to ride with respondent, he cannot be heard to say that this act of omission in failing to remove himself from the automobile—the place of danger—was not equally the same degree of gross negligence, wilfulness and wantonness as that he charges against the respondent; and contributed as a proximate cause."

In the case of *Ardis v. Griffin, supra,* the guest and the defendant, who was the driver of the car, had been drinking. Police officers warned the defendant in the presence of the guest not to drive his automobile as he was too drunk to do so. After this warning, the defendant did drive his car with Ardis riding with him as a guest. Under this factual situa-

tion, we held that the guest was guilty of contributory recklessness in voluntarily riding in the automobile driven by the defendant when he knew that the defendant was so intoxicated as to incapacitate him from driving in a reasonable and prudent manner.

In the case of *Jackson v. Jackson, supra,* we held that the evidence presented a jury issue as to whether the guest was guilty of contributory willfulness because the facts presented an issue as to whether the guest knew of the driver's intoxicated condition and continued to ride with him as a guest with such knowledge. We quote from such case:

"Viewing the testimony in this case as a whole, we are of the opinion that it raised an issue for the jury as to whether the respondent consciously failed to exercise due care for her safety. It was for a jury to determine whether the respondent knew, or should have known, of the intoxicated condition of her husband and continued to ride as a guest in his car with such knowledge. It was just a matter of minutes after the appellant and respondent left the Goody Shop until the accident occurred. The two police officers testified that the appellant was drunk at the time of the collision. As is heretofore stated, the wife testified that her husband took a drink of whiskey in her presence. There is testimony that at the scene of the wreck the whiskey bottles were under the feet of the respondent. From this evidence the jury could have concluded that the respondent knew of the intoxicated condition of her husband and continued to ride with him when she could have removed herself from the car at the Goody Shop just a few minutes before the collision."

It is not shown by the evidence in this case that the respondent's intestate knew of the driver's intoxicated condition when he entered the car at Wyatt's Service Station or, thereafter, discovered it and had a chance to leave the automobile at a safe place. It is our conclusion, viewing the testimony in this case as a whole, that it raised an issue for the jury to determine whether the respondent's

intestate consciously failed to exercise due care for his own safety. It was, likewise, for the jury to determine whether he knew, or should have known, of the intoxicated condition of the driver of the automobile and continued to ride as a guest in the car with such knowledge.

The second question for determination is whether the motion of the appellant for a nonsuit and for judgment *non obstante veredicto* should have been granted on the ground that at the time the accident occurred that respondent's intestate, and not the appellant, was driving the car.

The witness Wyatt testified that when Kirby, Weathers and West left Wyatt's Service Station, the automobile was being driven by Wendell West. Maynard Miller, the officer who investigated the wreck, testified that the distance from Wyatt's Service Station to where the wreck took place was three and eight-tenths miles. This officer also testified that Weathers told him that when they went to Wyatt's Service Station Kirby was driving the car, and that when they left West started to drive "and on up the road they changed again and Kirby was driving again." We quote the following testimony as to what Weathers told the officer about who was driving the automobile:

"Q. Let me ask you this. Did you have occasion to talk to Weathers more than one time, as to who was driving?

"A. Yes, sir.

"Q. The first time who did he tell you was driving when they left Wyatt's station?

"A. He told me that Robert Kirby was driving.

"Q. Now, the next time you talked to him, who did he say was driving?

"A. He said Wendell West was driving, but they stopped down the road and changed drivers.

"Q. They changed. In other words, he told you one thing one time and another the next time?

"A. That is correct."

It is apparent that Weathers made conflicting and contradictory statements as to who was driving the automobile. We have held in numerous cases that the credibility of witnesses and the weight to be given to their testimony are questions for the jury. *Jackson v. Jackson, supra.* The conflicts in the evidence, including the conflicting statement of Weathers, a defendant in the action, were all matters for the determination of the jury. *Ott v. American Agricultural Chemical Co.,* 171 S. C. 359, 172 S. E. 304. Since more than one reasonable inference can be drawn from the evidence as to who was driving the automobile at the time of the accident, such issue was properly submitted to the jury. *Fuller v. Bailey,* 237 S. C. 573, 118 S. E. (2d) 340.

The record in this case shows that the only parties who were present at the time the automobile was wrecked were the occupants of the car. The only living witnesses at the time of the trial were Weathers and the appellant. They were in court and did not testify. No explanation is made for their failure so to do. This raises the inference that the testimony of these parties would have been unfavorable to their position. *Robinson v. Duke Power Co. et al.,* 213 S. C. 185, 48 S. E. (2d) 808, and *Brock v. Carolina Scenic Stages et al.,* 219 S. C. 360, 65 S. E. (2d) 468.

It is our conclusion that the trial Judge properly refused the motions of the appellant for a nonsuit, judgment *non obstante veredicto* and alternatively for a new trial, on the two grounds heretofore stated.

During the argument of counsel for the respondent to the jury, the following statement was made: "If you will write a verdict for the amount we ask for in this complaint, I will collect at least $20,000.00." As soon as this statement was made in argument, counsel for Weathers and the appellant objected and moved for a mistrial. The trial Judge did not, at the time the objection to the testimony and a motion for a mistrial was made, rule thereon, but reserved

the objection for later argument. Thereafter, in the absence of the jury, the motion for a mistrial was heard and over-ruled. After the jury had returned a verdict in favor of the respondent, the appellant, in his motion for judgment *non obstante veredict* or for a new trial, contended that the trial Judge committed error in failing to grant a mistrial because of the argument made to the jury by counsel for the respondent. He asserts that said argument was highly improper and prejudicial because the only inference that could be drawn from such argument was that Weathers and the appellant carried liability insurance.

The proper course to be pursued when counsel makes an improper argument is for opposing counsel to immediately object and have a record made of the statements or language complained of and to ask the Court for a distinct ruling thereon. *White v. Southern Railway Co.,* 142 S. C. 284, 140 S. E. 560, 57 A. L. R. 634. This the appellant did.

The long-established rule of our decisions is that the the fact that a defendant is protected from liability in an action for damages by insurance shall not be made known to the jury. The reason of the rule is to avoid prejudice in the verdict, which might result from the jury's knowledge that the defendant will not have to pay it. *Horsford v. Carolina Glass Co.,* 92 S. C. 236, 75 S. E. 533. *Cox v. Employers' Liability Assur. Corp.,* 191 S. C. 233, 196 S. E. 549. *Haynes v. Graham,* 192 S. C. 382, 6 S. E. (2d) 903. *Dobson v. American Indemnity Co.,* 227 S. C. 307, 87 S. E. (2d) 869.

In the case of *Pardue v. Pardue,* 167 S. C. 129, 166 S. E. 101, this Court, with reference to bringing before the jury the fact that a defendant is protected by liability insurance, said:

"* * * This court is committed to complete adherence to the doctrine expressed by Mr. Justice Woods in the case of *Horsford v. Carolina Glass Company,* 92 S. C. 236, 75 S.

E. 533, 541: 'There can be no doubt on the bench or at the bar, that, in an action by an employee against his employer to recover damages for personal injury, both reason and authority forbid bringing into the evidence or argument the fact that defendant is protected by employer's liability insurance. Such evidence or argument has a manifest and strong tendency to carry the jury away from the real issue and to lead them to regard carelessly the legal rights of the defendant on the ground that some one else will have to pay the verdict. This is the only reason that can be assigned for attempting to use such testimony and argument. One of the most manifest and pressing duties, not only of courts, but of lawyers, is to prevent influences of this kind from finding their way into the administration of justice. In the discharge of this duty the entire commonwealth is deeply concerned, for the use in evidence and argument of such influences produces injustice, and waste of the time and labor of courts and juries at great public cost.' "

This Court reaffirms its adherence to the foregoing statement. It is highly improper for counsel, in argument, to advise the jury directly or by insinuation that the defendant is covered by insurance. Where it is sufficiently clear that insurance is implied by argument of counsel, this Court will not hesitate to reverse a judgment obtained where such an argument is made.

However, we must leave the control of argument of counsel very much to the discretion of the trial Judge, who is on the scene of action and is in much better position than we are to judge as to what is improper argument. *McLane v. Metropolitan Life Insurance Company,* 154 S. C. 366, 151 S. E. 608; *Johnson v. Life Insurance Company of Georgia et al.,* 227 S. C. 351, 88 S. E. (2d) 260, 55 A. L. R. (2d) 813. Further, the granting of a motion for a mistrial, or for a new trial, "by reason of anything occurring during the trial of a case is in the sound discretion of the trial Judge, and his ruling thereabout will

426

not be disturbed unless there has been an abuse of discretion". *Wynn v. Rood,* 228 S. C. 577, 91 S. E. (2d) 276.

In this case the trial Judge heard the remarks made by counsel for the respondent and did not construe such to be improper, and found that the argument was not prejudicial to the appellant. Although the point is a close one, we find no abuse of discretion. This exception is overruled.

The judgment of the lower Court is affirmed.

Affirmed.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.